17-1518, Nigel Hopton Morris v. Jefferson B. Sessions. Counsel? Good morning, thank you. Good morning, Your Honors. My name is Ilana Greenstein. I represent Nigel Morris, the petitioner in these proceedings. This case involves two discrete questions. First, the source and scope of this Court's review of claims for protection under the United Nations Convention Against Torture, and specifically claims for deferral of removal under the Convention. And second, the merits of Mr. Morris's claim, whether the immigration judge and the Board of Immigration Appeals erred in their analysis, and if so, whether those errors constituted errors of law, errors of fact, or both. It's that first question, the source and the scope of this Court's review and the tension within the various portions of the statute, which I think is probably going to occupy most of our time this morning, and I want to get to that in some detail. But before I do, I want to just point out that regardless, excuse me, of how you resolve that question, in the end, in Mr. Morris's specific case, the result has to be the same. Because the way in which the judge adjudicated his case, his wholesale failure to address, consider, mention in any way, rely on any of the documentary evidence of record, and to rely exclusively on oral testimony presented at trial, which without a doubt left holes which needed to be filled and which were filled by the documents submitted and which the judge admitted, those errors in the analysis constituted errors of law. So regardless of whether you find that your review authority is constrained to constitutional questions and questions of law, in the end, a remand is the only appropriate result to give the agency an opportunity to do what it had a responsibility to do, which is to address the record as a whole and come to a reasoned conclusion based on all of the record evidence. Go ahead. Just on the point that you were just making, to the extent that the IJ did not fully consider some of the evidence that was submitted, why isn't it fair to characterize that as just an improper weighing of the evidence, not a fundamental error of the law, but just not to diminish it, but kind of a sort of garden variety failure to weigh the evidence in a certain way, and hence your attempt to elevate that to an error of the law doesn't seem very convincing. Yeah. I mean, this court has been very clear, and there's numerous cases in which we've come to you asking you to find an error of law in the weighing and balancing of the evidence, and the court has responded in exactly that same way. However, and I would point your attention to the McComasone case, there are some circumstances under which this court has found that a wholesale failure to consider significant portions of the record evidence and to rely in the ultimate decision on the fact that there were errors in the evidence which were filled by those same portions of the record evidence that weren't mentioned in the decision did rise to the level of an error of law. In this case, the judge only discussed the expert testimony. That was all he talked about in his decision. It's all the board talked about in its decision. There's not a single even mention of we haven't considered all the rest of the evidence. And the court's been very clear that the agency's not required to go through and explain in painstaking detail how it analyzed every single bit of the record evidence, but there has to be some indication in the decision that the agency at least considered it. And it's so clear from Judge Day's decision that he didn't, because the very questions that he says Professor Harriet's testimony didn't answer were answered in the documents. I don't want to spend too much time on it because it's covered in some detail, especially in the reply brief where I sort of go through the record evidence and point out how it filled in those holes that Judge Day relied on to find that Mr. Morris hadn't satisfied his burden of proof. And I would point you again to the McComasomi decision, which I think is right on point and is very analogous to a situation like this. If there are no other questions on that question of the error of law versus fact in the weighing of the evidence, I want to turn to this question of the source of the question. Before you go, one last turn on that. The error of law, does it have to be, what is the error of law? Due process violation? Yeah. But if it's... It's both a due process violation and the statute specifically requires the judges to make a decision based on all the record evidence. But yes, in essence, it's a due process violation. But the second one, the second version of that, I understand if there's a due process violation, but I guess what I'm not quite getting is if the error is not considering the record as a whole, how is that different than substantial evidence review? I mean, you could characterize the failure to answer substantial evidence as a legal error, but we don't. I don't think. Are you suggesting we shouldn't? I'm sorry, Judge. Yeah. There are circumstances in which you do. And the McComasomi case is a case in which you did. Okay. So shifting now to this question over the source of the court's review authority of immigration decisions, the scope of your review once you have authority over a case and the way in which various portions of Section 242 of the Immigration Act affect these deferral of removal claims. In essence, my brother and I dispute the meaning of the words final order of removal as it is interpreted in two different sections of 242. Our question involves the source of judicial review versus the scope of that, the way in which it affects deferral of removal claims. And I want to point out that the answer to this question informs whether the statute should be interpreted so as to preserve your review authority or to strip it of almost all review authority in this instance. It's a question that implicates the separation of powers, the foundation of our system of government, and the authority of the judiciary to review executive actions. Our government works on a system of checks and balances and the law is clear that any statute which affects that balance, which purports to limit judicial review, must be construed narrowly. You can see that the bar to our view of a factual termination as to asylum and withholding of removal exists. Asylum, no. The statute specifically. Withholding of removal, you can see it exists, I thought. Yeah, I think this is limited to deferral claims. So that's the same separation of powers problem presents itself with respect to withholding of removal. Yes, but... But you don't deny that the statute is clear enough to make it so that we don't have a choice but to accept that jurisdictional prohibition. I don't know that I can answer that question. It is a case that involves it, and I will say... Well, are you conceding it or not? I neither concede nor deny. I thought you were conceding it. That's okay to concede it because it's a different issue. But in your brief, I thought you were saying that deferral of removal is somehow different than withholding of removal with respect to the question of whether the jurisdictional bar applies. I don't necessarily think it is because... Well, can you only win if we treat them as the same? I don't think it matters because withholding... Right, so that means you think you can treat them differently. So we can assume withholding of removal, we cannot look at the facts. I don't think so. No, and I'll explain why. The reason is that both withholding of removal and deferral of removal under the Torture Convention are not defenses to removal. They don't affect the propriety of a final order of removal. They happen after an immigration judge has entered a final order of removal. And the elements of eligibility for withholding and deferral... And I'm only talking about the Torture Convention because there's a separate provision in the statute which I... But when you're talking about the Torture Convention, I don't think it matters whether we're talking about withholding of removal or deferral of removal. And the fact that deferral claims, withholding claims, torture convention claims by necessity involve a determination that has nothing to do with the final order of removal at all. But counsel, I don't... It seems to me your argument flies in the face of Supreme Court precedent that says we don't sort of bifurcate these proceedings in the way that you're suggesting. I think, in light of the Supreme Court precedent, the appropriate way to view a decision with respect to denying deferral of removal,  it's part and parcel of the same proceeding. And it seems to me your argument just invites us to really evade the determination of Congress that these final orders of removal are subject to very limited review by us. So I don't know how you reconcile your position. But there seems to be very clear Supreme Court precedent. Are you referring to cases like FOTI? Yes. My government... Yes. So the government's brief. That's correct. Yeah. So all of the cases that the government cites to involved... Continue. Thank you. Well, I'll just talk about FOTI, for example. FOTI involves suspension of deportation. It was a predecessor to what we now call cancellation of removal. A defense from removal. It is a remedy in which the agency, instead of ordering deportation removal, grants lawful permanent residence status. And all of the cases that my brother cites involved these defenses from removal. Deportation. They predated our current scheme. But none of them involved situations like this in which the decision that the judge made had nothing to do with the final order itself. And they all discussed whether the words final order of deportation, as it was then called, should be interpreted to mean a determination of deportability or an ultimate decision in deciding whether or not someone should be ordered deported. That's exactly what FOTI talked about. They all talk about what we now see as 242A1, this scope of the court's review. None of them dealt with a situation like this in which there's some ancillary decision. Like in Common, the Seventh Circuit, they were reviewing whether or not the court had authority to review a decision by the immigration judge to deny a continuance. It had nothing to do with deportability. It had nothing to do with the ultimate decision to order deportation. Does asylum have to do with deportability? Sure, but asylum... Why? Because an application for asylum is a defense from removal. And is withholding of removal is not? No, because for withholding of removal and deferral of removal, a judge enters a final order of removal and in the next breath orders that the removal be withheld or deferred. If you think of it like a Venn diagram... Where the asylum is never a final order of removal? Exactly. So if that's right and you're wrong about B9, what is our jurisdiction to review either a referral or withholding of removal? Well, I would point you to A4, 242A4, which specifically seems to authorize review of torture convention claims and says the exclusive means for review of any cause or claim arising under the torture convention shall be via petition for review in the Court of Appeals. But that's not a grant of jurisdiction. But there's no reason to have that section. Yes, there is. Why? Because we could review the legal claim. If the jurisdictional bar to a factual review applies but not to a legal claim, then that's an exclusivity provision which says that with respect to the review we have over those, they have to be done only in these courts. But it gets back to this sort of strange animal that torture claims are. That was terrible grammar. Excuse me. But neither withhold any claim under the torture convention by its nature does not affect the propriety of the final order of removal. Well, I understand that that's a good reason for saying that we're not done reviewing the final order of removal. So the question then stands, what is the source of our jurisdiction to review it at all? I think the only way of interpreting the statute as a whole and of marrying all of these various sections is to interpret A1 as granting this court jurisdiction, authority, to review cases that come through removal proceedings. And all the legislative history, B9, another section, which I'm forgetting the number, but it's entitled Exclusive Source of Review, I believe. All of this, after Ira-Ira, was intended to channel removal cases to the courts of appeals so people didn't get two bites at the apple, they couldn't go to district court, fight the removal there, and then come to the circuit court. And that's what Cote and all those old Supreme Court cases were also actually getting to. The only way to interpret A1 in light of all these other provisions in light of reference in the statute to review of torture convention claims is to interpret A1 as a general source of this court's authority to review removal claims, cases that come to you from the immigration court and the BIA. And then these various other sections, the bar to criminal aliens, the bar to review of discretionary relief, they all limit the scope of your review within those parameters. All right. Thank you. Thank you. I'm far over time, and I appreciate your leniency. Not at all. Good morning. Greg Pennington on behalf of the Attorney General. The government disagrees that the court needs to spend much time on this jurisdictional issue because it seems pretty well resolved in this court. For over a decade, the court has held it lacks jurisdiction to review factual claims underlying the denial of asylum, withholding of removal, and even deferral of removal. As Chief Judge Howard wrote in Telitzky in 2011, that bar applies to deferral as well. Although that case was viewed through the lens of a motion to reconsider with the BIA, it was still applicability of the bar that guided the court's decision. As Judge Lipez wrote in Gordette in 2009, it applies to Convention Against Torture claims, withholding in that case for removal to Haiti. Actually, 1252B9 goes against counsel's argument here because as the court has described B9, it's a zipper clause. It was a back and forth between Congress and the courts about where we're going to hear these claims arising in removal proceedings. Originally in B9, it was all claims arising are going to be heard in the courts of appeals. But then in St. Cyr, the Supreme Court says, well, that would be a serious suspension clause issue, and therefore there's still habeas relief. And then Congress came back in 2005 in the Real ID Act and says, no, we really mean it, no habeas jurisdiction. We want all these cases to be heard in the courts of appeals. So B9 was just that zipper clause, as Judge Selling has written about it, it's breathtaking in scope. But what about the argument that your opponent's making about how we could construe A1 and A2? The reason I ask is if you look at Article 3 of the Torture Convention, which says that our obligation is to make sure that if there's a likelihood the person would be tortured, we won't send them back. If I understand your position, in a case in which the record compelled the conclusion that the person would be tortured if sent back, but the BIA concluded otherwise, notwithstanding Article 3's obligation that the United States is committed to not to send people back when they're likely to be tortured, this court would have to conclude that he had to be sent back. How is that reconcilable with our obligation to interpret statutes consistent with Charles Betsy's that we're not putting the United States in violation of, I mean, it can't be a more significant thing for the U.S. to commit to than the Torture Convention. Well, that would be just weighing up the facts, though. I understand that your view is that the statute has to be read to put the United States seemingly in breach of Article 3 of the Torture Convention. But I'd rather think that that's not Congress's intention. And Charles Betsy suggests I'm supposed to construe the statute with an eye towards not attributing that intention to Congress. So counsel, your opponent says, well, if you read A1 and A2 in a way in which A1 is expansive as to what constitutes the cases that we can review and A2 is read more narrowly so that an ancillary decision not to send someone back would be tortured through deferral of removal isn't subject to the bar, the United States would not be in the situation of sending people back when there is an administrative record that compels the conclusion that the person would be tortured if sent back. Well, Congress decided, and if you look at the legislative history and the enactment of the Convention Against Torture, the ratification in FERA, in the Second Circuit in Ortiz-Franco, Judge Lohear's concurrence kind of said, well, this kind of gives me pause, but this is exactly what Congress intended. They wanted the final arbiter to be the Attorney General or the Secretary of Homeland Security in extradition cases. Here, the Attorney General, and that's through the delegation to the Board of Immigration Appeals and the immigration judges. And it doesn't completely cut off the court's jurisdiction to fix what it believes was a fundamental error in a proceeding, and the government willfully agrees that if there is a question of due process violations here where evidence was not allowed in or, as the case counsel relies on, the alien was not allowed to testify, had to submit on the written record, there's cases where there could be the Board needs to take another look at this. This was so egregious that there's a due process violation, a record so clearly compels an opposite resolve. We have remanded cases to the Board where the IJ, the BIA, and combination have made a decision, a factual determination. It could be characterized as a factual determination without considering a great deal of evidence that was submitted on that issue. We have said that that is a failure in the decision-making process that should be addressed on remand. In effect, we're saying that is a kind of error of the law. So why doesn't opposing counsel have a point where you have hundreds of pages of documentary evidence that go to this critical issue as to whether the petitioner would be subject to treatment that qualifies as torture? There's no reference to that at all. Given some of our precedents, why? Not a due process violation, but why isn't that wholesale disregard of all of that evidence fairly characterized as an error of law? I think you could characterize certain things as an error of law. There's plenty of regulations that the immigration judge has to abide by as far as developing the record and cross-examining witnesses. There are certain things you can catch that legal hook. But to the point in this case, the immigration judge specifically said in his decision, I've considered all of the evidence and lists all the exhibits and all the documents. And this court has held that an IJ doesn't have to speak about every specific piece of evidence. A blanket clause is good enough to say that I've considered the evidence. And if you look at that evidence, which, by the way, is more than a decade old at the time of the removal proceeding. Most of it's from the early 2000s. But the expert testimony just mimics the evidence that was submitted document-wise. The expert testified about corruption in the police force and these drug organizations having connections with the police force and torture in prisons. And that's kind of mimicked in the documentary evidence. So the immigration judge says, I considered it. He recounted the expert testimony, which basically mimicked that evidence. There's just no indication that that evidence would have swayed it either way. Can I ask you what the authority is in the government's view for deferral of removal? The authority is for under 1208.1A. Which is a reg. Which is a regulation. There's no statutory. What's the authority for the reg? I would imagine it would be the ratification of the treaty, which then specified to the Attorney General to come up with regulations to implement it. I don't know for sure. So the reg is just a direct attempt to implement the treaty? Correct. There's no statutory grant? There's no statutory grant or discussion at all of the Convention Against Torture. It was ratified and then the regulations. How does that fit with your account of Congress having made some judgment on this? I guess I'm not following. There was a treaty that says don't send people back who are likely to be tortured. In an effort to implement that obligation, the agency has then said, okay, well, we'll defer removal when we've determined that someone's going to be tortured. And then the congressional decision to weigh in on that is found in the 1252 AD2 or whatever? Well, 1252 AD4 is where Congress said, well, we're going to let the Courts of Appeals review Convention Against Torture claims through the petition for review process. And was the reg in place when that statute was passed? I'm not sure of the timeline. But deferral of removal was simply I'm just trying to think. Was deferral of removal a concept when the statute was passed? No. It all came around 1998 when the treaty was ratified. So the Convention Against Torture wasn't ratified until 1998. And what was the statutory bar passed? 1996 was IRA IRA. And so you're confident that in passing that statutory bar, they meant to limit our ability to implement a convention that hadn't been ratified yet? Well, when they added 1252 AD4 to say that Convention Against Torture claims are going to be treated through the regular petition for review process, the grant of jurisdiction in AD1, then the criminal alien bar still When they added that, they didn't reference The statutory bar that we're talking about, I forget, does it specifically refer to CAT? No, the statutory bar is just the Court of Appeals will not have jurisdiction to review What's our confidence that the bar applies to CAT at all? Congress was clear in saying in 1252 A2C that the Court of Appeals doesn't have jurisdiction to review any petition for review from an alien file removable on certain criminal grounds. I see I'm out of time. I can continue. Yes. So in saying that the Court of Appeals doesn't have jurisdiction to review any petition for review, and Congress saying the only review of a Convention Against Torture claim is through the petition for review process, those two can be read in any other way, but to say that the Court of Appeals lacks jurisdiction to review a petition for review, which includes a Convention Against Torture. The provision that references, I don't know if you know this, the provision that references the Convention Against Torture, which is A4? Yes. Does the legislative history of that refer to the jurisdictional bar? I don't remember. I would point the Court to Ortiz-Franco in the Second Circuit. It's a recent case which discusses not only the legislative history and how these provisions go together, but also is a pretty strong rebuttal of the Seventh and the Ninth Circuit's positions. If the Court has no further questions, I'll ask the Court to dismiss the petition for review. Thank you.